## Commonwealth v. Dyer

*C. William Kraft, Jr.*, district attorney, and *Joseph E. Pappano*, assistant district attorney, for Commonwealth.

*James N. Robertson*, for defendant.

BRETHERICK, J., July 21, 1950.—Defendant was indicted on the charge of operating a motor vehicle upon the highway after his operating privilege was suspended or revoked, and before the same was reinstated, contrary to section 620 (*h*) of The Vehicle Code of 1929, as amended, 75 PS §231(*h*). A trial before a jury resulted in a verdict of guilty. Defendant's motion for a new trial raises but one question which need be considered at this time, i.e., whether or not the evidence was sufficient to sustain his conviction.

The material facts in the case are not in dispute and may be briefly stated.

On August 26, 1949, one Phillip Trainer (Junior) was the owner of a 1938 Pontiac sedan, which, at about 11 o'clock that night was parked on a parking lot at Ninth Street and Morton Avenue, in the City of Chester, this county. At that time, Trainer was standing on the corner of Ninth Street and Morton Avenue, when he was joined by defendant, John Joseph Dyer. After some conversation, both men entered Trainer's automobile and attempted to start the motor. Being unsuccessful, they pushed the car out onto the cartway of Ninth Street. After some further efforts to put the automobile in operation, they hailed a passing motorist and requested him to give them a "push". Trainer's car was then on Ninth Street, at about McDowell Avenue. The car was pushed in an eastwardly direction along Ninth Street, a public highway, for a distance of two or three squares, with defendant steering the disabled car and endeavoring to start the motor, when police officers arrived and placed Trainer and defendant under arrest.

It may be assumed, for present purposes, that the Commonwealth's testimony was sufficient to establish the facts that the automobile would not start because the coil wire and the ignition wire had been removed, and that, for that reason, it was mechanically impossible to put the motor in operation. Neither defendant nor Trainer knew of the removal of the wires until sometime after their arrest.

Admittedly, at the time of the events herein described, defendant's operating privilege had been suspended and had not been reinstated.

Section 102 of The Vehicle Code, 75 PS §2, defines a motor vehicle as "every vehicle, as herein defined, which is self-propelled", excepting certain things not here relevant.

Defendant contends that since the automobile was not self-propelled, and was incapable of self-propulsion, at the time he was engaged in steering it, it was not a "motor vehicle" within the meaning of the act of assembly.

While there appears to be no appellate court decision in this State directly in point, we think defendant's contention is without merit. The same argument was presented in Commonwealth v. Westhafer, 70 D. & C. 137, where defendant was charged with operating a motor vehicle without an operator's license. In that case, the evidence showed that defendant was at the wheel of a Chevrolet automobile which was incapable of moving under its own power and was being towed to a junk yard. In holding that the disabled car was a "motor vehicle", the court said (p. 139) :

"We think the vehicle being towed was a 'motor vehicle'. It is true that at the time it was being towed it was not 'self-propelled', that is, it was not being moved by the power of its own engine. But a motor vehicle does not cease to be one when it ceases to be self-propelled. If that were true, a parked car would

cease to be a motor vehicle, and so would one which was being 'propelled' down hill by gravity. In other words to hold that a vehicle was a motor vehicle only while it was being propelled under its own power would be to hold that any time the engine is not pulling or 'propelling' the car it ceases to be a motor vehicle. This is not a reasonable construction. Interpretations of a statute must be reasonable: Statutory Construction Act of May 28, 1937, P. L. 1019, 46 PS §552(1).

"The term 'self-propelled', as used in The Vehicle Code, is descriptive of the type of vehicle, rather than the use that is being made of such vehicle at a particular time.

"At the time the car was being towed it was incapable of being propelled under its own power. But a motor vehicle does not cease to be such at the instant its motor becomes incapable of operation. A car without an ignition key, or with no gas in the tank, or with a dead battery, or a blown fuse, or a burned wire, or a broken block does not lose its identity as a motor vehicle. The legislature did not intend to make a motor vehicle chameleonic."

Quoting from a Vermont case, the court further said (pp. 139, 140):

" 'Manifestly it was the design, mechanism and construction of the vehicle, and not its temporary condition, that the legislature had in mind when framing the definition of a motor vehicle. Neither the authorities nor sound logic admit of a different conclusion.' "

While the Westhafer case is not, of course, binding upon us, we think the reasoning of the court is eminently sound, and the conclusion just. It follows that defendant's motion for a new trial must be dismissed.

### Order

And now, July 21, 1950, upon consideration of the foregoing case it is ordered, adjudged and decreed that defendant's motion for a new trial be, and the same is, dismissed.